JOURNAL ENTRY and OPINION
This case is before this court on appeal from a decision of the court of common pleas granting partial summary judgment for the defendants with respect to the validity of five close corporation agreements (CCA's). Plaintiffs-appellants, the five subject corporations (Myocare Nursing Home, Inc.; Aristocrat West Nursing Home Corp.; Crestmont Nursing Home North Corp.; Pharmed Corp.; and Midwest Medical Supply Corp.) and six of their eight current shareholders (Anthony M. Coury; David J. Coury; Bernadette Faddoul; Deborah McDonald; Jane Abou-Chedid; and Mary Cooper), raise a single assignment of error for our review:
 THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES.
Defendants-appellees are Joseph E. Coury, a former shareholder of the appellant corporations, and his son, Elias Coury, a current shareholder. They cross-appeal, arguing:
 THE TRIAL COURT ERRED IN DESIGNATING ITS FINAL ORDER OF NOVEMBER 11, 2000 AS PARTIAL.
We find that genuine issues of material fact preclude summary judgment for either party. Therefore, we reverse and remand for further proceedings.
 PROCEDURAL HISTORY
The complaint in this case was filed on April 18, 2000. It sought injunctive relief against any action based on the CCA's, a declaratory judgment that the five CCA's were void, unenforceable and/or invalid, a declaratory judgment that defendants were estopped from enforcing the CCA's based on the doctrines of laches, waiver, release and/or estoppel, and reformation of the CCA's to comply with Ohio law.[1] Defendants counterclaimed for a declaratory judgment that the CCA's were valid and enforceable and that the corporations could redeem the shares of the plaintiffs and demanded attorney fees.
A motion for leave to amend the counterclaim was filed July 17, 2000. This motion sought to add claims for conversion and waste and to add a new party defendant for the purpose of imposing a constructive trust. The trial court had not ruled on this motion at the time this appeal was filed.
Plaintiffs moved for partial summary judgment on June 30, 2000, arguing that the CCA's were invalid as a matter of law because they did not qualify as CCA's under R.C. 1701.591. The only evidence attached to the motion was the affidavit of appellant Anthony Coury.
Defendants filed a response to plaintiffs' motion and a cross-motion for partial summary judgment seeking a declaration that the CCA's did comply with R.C. 1701.591 and were valid and enforceable. The evidence attached to their briefs included deposition testimony from both defendants and Eli T. Naffah, the attorney retained by defendant Joseph E. Coury to prepare the CCA's; affidavits of Joseph E. Coury and Eli Naffah; and copies of the CCA's. Plaintiffs' response to this motion relied upon the deposition testimony of Anthony Coury, Eli Naffah and accountant Darice Sebera-Ensman, and the affidavit of plaintiff Bernadette Faddoul. A supplemental brief attempted to add a written expert report from a forensic document examiner.
On October 26, 2000, the court denied plaintiffs' motion and granted the defendants' motion, concluding that there exists no genuine issue as to any material fact in regards to the validity of the [CCA's] * * *. Defendants then dismissed their claim for attorney fees and costs on October 30, 2000.
Plaintiffs appealed the October 26, 2000 order on November 24, 2000, Cuyahoga App. No. 78882. This court dismissed that appeal on November 28, 2000 for lack of a final appealable order.
On December 4, 2000, the trial court issued an amended order as follows:
 Pursuant to parties' oral hearing held 10-31-00 and there being no just reason for delay Defendants' Cross Motion for Partial Summary Judgment (file 8-2-00) is hereby granted as there exists no genuine issue as to any material fact in regards to the issue of validity only of the close corporation agreements. [Emphasis in original.]
Plaintiffs appealed from this order on December 28, 2000.
 FACTS
The evidence submitted for purposes of the partial summary judgment motions reveals the following undisputed facts.
The six individual plaintiffs, defendant Elias Coury, and non-party Joseph M. Coury are all siblings and shareholders of the corporate plaintiffs, largely as a result of gifts of stock given to them by their father, defendant Joseph E. Coury, from December 1993 to September 1994.[2] The father has not owned any stock in the corporations since 1994.
On or about August 28, 1999, the father showed plaintiffs copies of five documents, one relating to each of the corporations. Each document was entitled Close Corporation Agreement. All of the copies purported to have been executed on January 23, 1992, and to be signed by the owner or owners of all shares in each corporation at that time; that is, by the father and, with respect to Myocare Nursing Home and Midwest Medical Supply, Elias Coury.
The CCA's gave the father a seat on the board of directors of each corporation and the title of Chairman, and authorized him to act in any manner he deemed appropriate absent the unanimous consent of the shareholders. The CCA's also provided that the corporations would redeem the shares of any shareholder who challenged the legality of the CCA or refused to abide by its terms.
The father claimed to have kept the originals of the CCA's after they were executed in 1992 but to have lost them some time between 1992 and 1999. However, the attorney who prepared the CCA's had retained copies of them. Both the father and the attorney said the attorney gave the father copies of the CCA's in 1999 and represented that they were true and accurate copies of the originals.
The CCA's are not referenced in the corporations' articles, regulations or minutes. Though no stock certificates were delivered to the plaintiffs until 1999, Plaintiff Bernadette Faddoul claimed she saw the certificates in April 1996 and [did] not remember seeing words, phrases or legends on those certificates, either the front or the back, which referred to any documents called Close Corporation Agreement. Only the father, the attorney, and Elias Coury saw the CCA's before 1999.
The father's accountant discussed with him the execution of a CCA in late 1993 or early 1994; the accountant was not aware that the father had executed CCA's until 1999 or 2000.
 LAW AND ANALYSIS
Appellants' sole assigned error contends that the trial court erred by awarding partial summary judgment to the defendants with respect to the validity of the CCA's. Appellants urge that there are genuine issues as to the authenticity of the CCA's and that the CCA's do not meet the requirements of R.C. 1701.591. We agree that there is a genuine issue of fact as to the validity of the CCA's, precluding summary judgment for either party.
A trial court order granting a motion for summary judgment determines that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). This is a legal ruling which we review de novo. Hillyer v. State Farm Mut. Auto Ins. Co. (1999), 131 Ohio St.3d 172, 175; Weiland v. Benton (1996), 108 Ohio App.3d 512, 518.
As the proponents of the CCA's, defendants bear the burden of demonstrating the existence of the contracts. The CCA's are valid close corporation agreements which may be binding on plaintiffs, who acquired their shares by gift, only if the agreements were assented to in writing by every person who was a shareholder of the corporation at the time the agreements were adopted. R.C. 1701.591(A)(1) and (H). Thus, the date on which the CCA's here were signed is a critical factor in assessing whether they may be valid and binding agreements. If they were signed after the father gave away some or all of his stock, they could not be effective as close corporation agreements because they would not have been assented to by every shareholder.
An original document is ordinarily required to prove the contents of a writing. Evid.R. 1002. However, [t]he original is not required, and other evidence of the contents of a writing * * * is admissible if: * * * all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith * * *. Evid.R. 1004(1). The undisputed evidence showed that the original, signed CCA's were lost. Though plaintiffs question the truthfulness of their father's and attorney Naffah's sworn statements, they have presented no evidence that the originals were not lost or that their father lost the documents in bad faith. Therefore, the trial court properly considered the copies as evidence of an agreement and of the contents of the agreement. Cf. State v. Brown (1995), 108 Ohio App.3d 489, 496.
Regardless of whether the originals or duplicates were offered into evidence, the documents must be authenticated or identified as a condition precedent to their admissibility. St. Paul Fire Marine Ins. v. Fast Freight, Inc. (1982), 8 Ohio App.3d 155, 157. Here, both the father and the attorney identified the CCA's as agreements that were executed in 1992. See Evid.R. 901(B)(1). Therefore, there is evidence to authenticate the copies of the CCA's.
On the other hand, plaintiffs provided the trial court with circumstantial evidence that the CCA's were not signed until at least 1996 or thereafter. This evidence included proof that:
 • the agreements were not mentioned in any of the corporations' articles, regulations or minutes, see R.C. 1701.591(A) and (B);
 • as of 1996, the stock certificates made no mention of the CCA's, see R.C. 1701.591(H);
 • the father's accountant was not told about the agreements until 1999 or 2000, even though the accountant had earlier suggested that the father adopt CCA's in connection with his gifting program;
 • the plaintiffs were not told about the agreements until August 1999.[3]
Viewed in the light most favorable to appellants, this evidence implies that the CCA's were not signed until at least 1996. If that is when the CCA's were executed, then they were not executed by all then-current shareholders, because stock ownership changed beginning in December 1993.
We recognize that this evidence is not conclusive; it does not entitle plaintiffs to summary judgment that the CCA's are invalid. However, in considering whether summary judgment should have been entered for defendants, we must view the evidence in the light most favorable to the opponents of their motion. Indirect and direct evidence are entitled to equal consideration. In this case, the circumstantial evidence presented by plaintiffs raises a genuine issue of material fact as to when the CCA's were executed. If the CCA's were not signed until 1994 or thereafter, they were not executed by all the then-current shareholders and, therefore, were not valid CCA's.[4] The conflicting evidence on this issue must be submitted to a factfinder; accordingly, we reverse the trial court's order and remand for further proceedings. This conclusion renders moot the other issues raised in appellants' brief (regarding the validity of the CCA's under other provisions of R.C. 1701.591) and appellees' cross-appeal (concerning the finality of the trial court's ruling).
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and JAMES D. SWEENEY, J. CONCUR
[1] The claims against a third defendant, Fifth Third Bank, were voluntarily dismissed on May 24, 2000.
[2] There is one exception to this statement. Defendant Elias Coury owned fifty-five of the one hundred outstanding shares of Myocare Nursing Home and fifty-one shares of the one hundred outstanding shares of Midwest Medical Supply before December 1993.
[3] Appellants also rely upon the report of a document examiner, who opined that Elias Coury's signature on two of the CCA's included features which did not appear in known examples of his signature until 1994. However, we agree with appellees that the forensic document examiner's report was not evidence the court could properly consider on a motion for summary judgment. See Civ.R. 56(C). Therefore, we have not considered it here.
[4] Appellees claim appellants must prove the CCA's invalid by clear and convincing evidence, pointing to case law concerning the validity of deeds. The CCA's were not executed with the formalities which create the presumption of validity accorded to deeds; therefore, a heightened burden of proof is not warranted.